People v. Darren McCloud. Case number 516-0457. Counsel, are you ready to proceed? May it please the Court. Counsel, my name is Sharon Shanahan and I represent the people of the state of Illinois. This case deals with the partial suppression statements defendant made to the police. For quite some time during his interview with the police, defendant refused to implicate anyone other than a young man named Deshawn and his nickname D-Fang, and robbery gone bad. Defendant asked if there wasn't a video of the shooting and the police officer said, what difference would that make? The trial court believed the defendant answered, because I don't want to say nothing. The trial court believed that this was an unequivocal indication of the defendant's right to remain silent and suppress everything the defendant said after that statement. Now the State has raised in Issue 1 a question as to whether the trial court misheard the statement. I don't intend to discuss that issue here before this Court, because really the only way to decide that case on the merits is just to listen to the interview and I would say listen to the interview rather than accepting trial counsel's, and here I'll put in my air quotes, transcript. Which is just his interpretation of what the defendant said. Notably, the phrase in question is not the phrase which defense counsel believed was an indication of the right to remain silent. The trial court was the first one who questioned that phrase and defense counsel's entire argument at trial on that phrase was just to agree with the trial court. So I urge the Court to listen to the interview and see what you think it says. Moving on to... How much counsel of the video was suppressed after the statement was made by the defendant? Well... How much are we talking about? Is it about two hours of questions that was suppressed? I don't think it was that much. I'm sorry, I don't... You know, when I listen to an interview, it takes six hours to listen to two hours, and that's why that's not coming to mind. But I know they talked to him for quite a while before they... As I'm thinking and talking to you at the same time, I believe it was they talked to him for a while, they took a break, they talked to him some more. I think the whole interview of actually talking to him was a total of four hours. And I believe that this statement in question came roughly halfway through. Okay. Thank you. That's the best I can answer that with my recollection of the video. So this case deals with an effort to steal drugs from a man named Lint Montgomery. D-Thing set it up, and he was aided by some comrades. And the police believed that the defendant was involved somehow, and that he knew he was involved. So they wanted to question him about it. And fairly early on in the interview, the defendant admitted that D-Thing had called Lint and they were going to rob him. So the police questioned the defendant about who they were. But the defendant was reluctant to tell the police who went with D-Thing to rob Lint. For example, the police said, tell us who really did it. The defendant would not say who D-Thing was outside with. The police said, asked the defendant, it was not him at the scene, then who was it? Was it Sean or Little Mike? The defendant says he can't tell me who did it. When asked why he would not tell who was there with D-Thing, he said he'd take it to the grave because that's the way he was raised. That's how this interview went through this significant period of time. The whole focus of it was who was there with D-Thing. And the defendant says, I'm not going to tell you. I don't want to tell you. It's not the way I was raised to tell on people. There are numerous examples in the state's brief of exactly the questions that the police ask as to who was there. And the defendant's saying, I'm not going to tell you. Then we get to the colloquium question. They've been asking the defendant who went outside. The defendant again says, that's what I don't want to talk about. Then this happens. The defendant says, I hate to bring this up, but y'all have got no footage of what happened? And Agent Janice says, what didn't the bit make? And the defendant says, because I don't want to say nothing. I am, by the way, assuming for the purpose of this argument that that's what he said, as opposed to Issue 1 where I said I don't think that's what he said. Well, what is it, your position, what is it that you think he said? Well, I would have to look through my brief. I set it forth in the brief. Okay. You just stand on your brief on that point? Yes, Your Honor. But assuming that you agree with what the trial court said, that's what I'm discussing here. So assuming the trial court is correct, the defendant says, I hate to bring this up, but y'all have got no footage of what happened? Agent Janice says, what difference did that make? And the defendant says, because I don't want to say nothing. So the question before this court is, is the phrase, because I don't want to say nothing, taken in context with everything that's happened up to this point, an unequivocal and unambiguous invocation of the right to be silent, or was it reasonable for the police to see this as an indication for the defendant's continued determination to not say nothing about who was present there with the defendant? Now, the United States Supreme Court has dealt several times with the question of the right to remain silent. In Edwards v. Arizona, the Supreme Court held that if the suspect invokes his right to remain silent, the police must immediately cease questioning, and the application of that prophylactic rule requires this court to determine whether the accused actually invoked his right to remain silent. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. If a suspect makes a reference to silence that is ambiguous or equivocal, in that a reasonable officer in my circumstances would have understood only that the suspect might not be invoking his right to remain silent, then cessation of questioning is not required. The likelihood that a suspect would wish silence or account is not a test for the applicability of Edwards. And that's all from the Davis Court, Davis v. Arizona, United States Supreme Court. The other thing that a court must consider is the other side of Miranda, which is the need for effective law enforcement. It's police officers who have to make these decisions of whether or not someone has invoked their right to remain silent and whether they can therefore continue to interview an officer. The Davis Court noted that if police were required to cease questioning if a suspect makes a statement that might be a request to remain silent, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect, in fact, wants to remain silent, even though he's not said so, with the threat of suppression if they're wrong. When officers conducting the questioning reasonably do not know whether or not the suspect wants to remain silent, a rule requiring the immediate cessation of questioning would transform Miranda's safeguards into wholly irrational obstacles to legitimate police investigative activity. Again, Davis. Therefore, a defendant must articulate his desire to remain silent sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request to remain silent. After a knowing and voluntary Miranda warning, which this most definitely was, law officers may continue questioning until and unless the suspect clearly requests that he remain silent. Moreover, the statements are not taken in isolation. And when you look at the statements here, it's very clear that, as I said before, they are all part of the question of where, who is the defendant. Thank you, Counsel. Thank you. May it please the Court. Counsel. My name is Lloyd Credo from the Law Office of Lloyd M. Credo, and I'm here on behalf of the defendant, Appellee Darren McLeod. If I could start to provide a little more context, as Counsel did, to the underlying circumstances of why we're here. On February 20th, 2015, there was an individual by the name of Frederick Purnell shot as a passenger in a car, and the state's theory at the time was that there was an attempted robbery going wrong and that that's how Mr. Purnell was shot. Five days later, after the shooting, police called in my client, Darren McLeod, to an interrogation on an extended period of questioning. To address, I believe, the Justice's question previously, the overall interrogation in this case lasted for about eight hours, with about four hours of actual questioning in the eight-hour period. The statement and the invocation by my client that is relevant here occurs about six hours into the interrogation process. The interrogation began around 10.30 in the morning, or thereabouts, and it's around 4.50 in the afternoon that my client invokes that he no longer wishes to speak with law enforcement, thus invoking his Fifth Amendment right. If I could first address Counsel's representations as to the statement. In the underlying motion to suppress briefing, trial counsel, who was different from myself, had typed up and prepared a typed transcript of the actual videotaped interrogation. But at the actual hearing for the motion to suppress, the trial court acknowledged that they listened to the interrogation and watched the video themselves and that they weren't relying on any transcript provided by defense counsel at the time. And I'll represent to the court, it's very clear that my client says to law enforcement, because I don't want to say nothing. And the context offered for this statement and this invocation of saying I no longer want to speak with law enforcement is very important. As I mentioned before, the interrogation would go on for about six hours at this point. And time and time again, my client has represented his discomfort with speaking with law enforcement and acknowledging that he did not want to talk with law enforcement. Now, I think the state's interpretation of that is that he's just honoring some type of street code and that he doesn't want to share information. I think a full understanding of the context is his general discomfort with speaking at all with law enforcement, which ultimately rises to the statement at issue here, because I don't want to say nothing. I will submit to the court that at the time of the motion to suppress hearing, the state's attorney represented her interpretation of the statement was him saying, because I don't want to name names. Again, I think the statement speaks for itself in the video, and I think it's very clear my client is saying he doesn't want to speak with police. There's no mention of naming names. And really, that statement would not fit into the immediate context of the questions being asked of him. In the appellant's brief, the context in which they provide for why they don't believe this was a statement generally invoking a refusal to speak to law enforcement is that the officer's immediately preceding question was engaged in a conversation about whether or not there was video surveillance. It would show what had actually happened on the scene here the night that Frederick Cornell was shot. The trial judge actually addressed this argument in his underlying ruling, which is it didn't make sense to him why all of a sudden my client, Darren McLeod, would say, I don't want to say nothing without raising any specific reference to a video any further in the conversation. There are several parts of this interrogation in which there's a back and forth with law enforcement and my client, where my client said, you know, if you have a video, the video will show you, I'm paraphrasing, but if you have a video, the video will show you what happened. This is a very different moment in time in this interrogation. This is a moment in time in which my client is attempting to shut down the questions being asked by law enforcement. And I believe there could be no greater illustration of an attempt to invoke your right than to say definitively, I don't want to say nothing. This is not the type of circumstance where that statement could be open to interpretation, which I believe a great deal of the case law cited to in the appellate brief is easily distinguishable from the situation here. For example, I believe counsel just mentioned the Davis case and the U.S. Supreme Court, for purpose of reference, 512 U.S. 452. In the Davis case, there was actually an affirmation of the trial court's ruling against the defendant's motion to suppress. And the basis for that is, again, in an extended interrogation context, at one time the defendant had said, well, maybe I want a lawyer when he was responding to the police questioning. And with that, police followed up immediately and said, are you telling us you want a lawyer? Are you telling us that you're invoking your right to counsel here? And in that case, the defendant backtracked and said, no, I don't want a lawyer, and continued to cooperate in the questioning. Ultimately, near the end of the interrogation in Davis, again, the defendant says, I think I want a lawyer, and he wanted to stop the interrogation at that time. The motion to suppress decision in Davis was that that first mention of maybe I want a lawyer, was that the first time that he definitively invoked his right to counsel, or was it the latter invocation in which he definitively said, I want a lawyer and I don't want to speak to you anymore? That is not the circumstance in which we have here. In the Davis case, the Supreme Court held that saying maybe I want a lawyer is not unequivocal, and it is ambiguous when he said I would continue to participate in the questioning with law enforcement. In the case before this court, it is easily distinguishable, in which there is no equivocation by my client that maybe I don't want to keep talking with you, or maybe I don't like this particular question. He is saying I don't want to say nothing to law enforcement any further. Counsel, do you think law enforcement had a duty to follow up, follow a question like I guess the facts in Davis? What do you mean? Do you feel like law enforcement had that duty? I wouldn't go so far as to say they have a duty, but I do believe that the onus is on law enforcement to provide clarification, and that law enforcement now is an agent of the state, and the state is coming in saying that there was some type of ambiguity in it, and yes, law enforcement would have been responsible for trying to provide some clarification. You're out of order, so I'm going to just use the word duties. I know there is some case law that is hesitant to apply the term duty to law enforcement, but there is a great deal of case law that says yes, law enforcement is responsible for that or would provide clarification to their argument. One of the overarching considerations here for the court, and I don't know if counsel addressed, is what the standard of review here of the decision made by the trial court. In the appellant's brief, they acknowledged that in general, constitutional review is a standard review that they know about here by the court, but I think their brief overlooks the nuanced fact that really what the review here is, what was a finding of fact by the trial court, and really there was two findings of fact. One, that the actual statement was my client saying, because I don't want to say nothing, and two, that that statement was intended to be an invocation of his Fifth Amendment rights, and I do believe that the appropriate standard for the court would be, were those findings made against the manifest way of the evidence. And I believe the case law in Illinois, as cited to in our brief, clearly outlines that a great deal of deference is to be given and afforded at trial court when arriving at findings of fact such as that, because they are in the opportune moment to review the evidence firsthand, not just in video in this case, but also this decision was made in the context of a full hearing in which the actual officers who performed the interrogation were present and testified on the stand. And I will note for the record that those officers at no time ever contradicted the idea that the phrase at issue was because I don't want to say nothing. And I think that it's an important distinction as well, because the trial court acknowledged that this statement happened about 4.50 p.m., and this is the statement that the trial court granted the suppression motion on, but he now said a month before there wasn't a critical statement, and there was a statement that was hard to hear. And so you can tell that the trial court really did provide a lot of analysis and at the hearing level considered all the totality of the circumstances presented to him. And so for those reasons, Your Honor, because I think the statement stands for itself, because I think it was an unequivocal assertion of its Fifth Amendment rights, and because I believe the standard here provides deference to the trial court's findings of fact, we would ask that you affirm the court at the lower level. Thank you, counsel. Rebuttal. Your Honor, you asked whether police officers had a duty to stop and clarify. Was this an invocation? And this is one of the errors that the trial court made, because the trial court specifically said, although the officer is not obligated to ask about a demand for silence once one is made, it might be the constitutional thing to do. Well, first of all, it can't be not an obligation but be the constitutional thing to do. I think he was a little confused there. Moreover, the United States Supreme Court in Davis has specifically said, has specifically declined, excuse me, to adopt a rule requiring officers to ask clarifying questions. They did say, well, you know, it might be a good thing to do, but they specifically declined to ask clarifying questions. Furthermore, I continue to disagree with defendant's interpretation of the tenor of this argument. If counsel for defendant says that defendant kept telling the police he didn't want to talk to them, and that was the tenor of the argument, if that were true, then the trial court would have suppressed at a much, much earlier portion in his interview. It was only on this particular statement well into the interview that he asked, that the trial court said. This is not the statement that defense counsel said was an invocation of Miranda. This is one that the trial court picked out. That's why there was no discussion about it below. And so that's why it's very important to realize that to answer your question, there was no onus on police officers to stop and clarify, especially since they've been saying, tell us who was with the thing, and defendant kept saying, I don't want to tell you who's with these things. I don't want to say. That's why I think the statement, I don't want to name names, does make sense. He doesn't want to say who was there. Nonetheless, even if he said, I don't want to say nothing, he doesn't want to say who was there. That was the entire tenor of the argument. Addressing the defendant's argument that Davis is less applicable because they were affirming the decision below, to take a United States Supreme Court decision like Davis and say that it's limited in that way is a misinterpretation of Davis. Davis sets forth the basis for determining, in any case, whether a person has invoked his right to counsel or to remain silent. And that is the invocation has to be unequivocal and unambiguous. It doesn't matter whether Davis in particular affirmed or reversed. What matters is the United States Supreme Court has set forth that guidance for police officers, for trial courts, to say that it's unambiguous and unequivocal. I discussed in my case, in my brief, the United, or the, oh, I'll get it right in a minute, California Supreme Court case of Peeble v. Williams with a virtually identical statement. They show a picture to the defendant. He says, I don't know that woman. He says, I know, but you met her the day before. He says, I don't know her. The police officer says, he didn't know her, but he asked, you met her that day. The defendant says, I don't know her. The police officer persists. What did you do that day with her? The defendant responds, I don't want to talk about it. Later on, the defendant admits robbing the victim and forcing her into a car and setting the car on fire. And on appeal, the defendant said, I don't want to talk about it, was an invocation of his right to remain silent, and the California Supreme Court disagreed. They believe that the statement, I don't want to talk about it, was an expression of the defendant's frustration with the detectives for failure to accept his repeated insistence that he was not acquainted with the victim as proof that he had not encountered her on the night of the crime. That's just what happened here. Thank you, Your Honor. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision in due course.